ANNA B. FLEMING (now Mrs. E. G. Wylie), Appellee, v. ROBERT J. FLEMING et al., Appellants.

No. 39672.

APRIL 14, 1930.

REHEARING DENIED MARCH 17, 1931.

*William Emory Miller*, for appellants.

*Parsons & Mills*, for appellee.

MORLING, C. J.—After the submission of the case to the trial court, the plaintiff, without notice and without leave of court, filed a purported amendment to her petition, which she  brings here by way of amendment to the abstract. Defendants move to strike this amendment to abstract, on the ground, in substance, that the purported amendment to petition is merely an intrusion into the record, and has no proper place there. The motion is sustained, and the purported amendment will be given no consideration.

To assist in the application of a lengthy detailed statement of the issues and evidence that seems to be necessary, assuming that the reader has a general acquaintance with the former opinion, *Fleming v. Fleming*, 194 Iowa 71, we preface the following résumé:

Defendants' main contention is that plaintiff's interest should be set off in kind, and that there is no issue upon which a personal judgment may be rendered. The statute reads (Code, 1897, Section 3364):

"The property itself shall be distributed in kind when that can be satisfactorily and equitably done. In other cases, the court may direct the property to be sold, and the proceeds distributed."

In the present case, the decedent and his defendant copartners were possessed of no individual holdings. All of their property was partnership property. The interest of each was

 merely his share of the residue after liquidation of the partnership affairs. It was undoubtedly the policy of all the partners, before the death of Charles, not only to hold all of their property in partnership, but to exclude widows and heirs (other than themselves) from possible participation or interference in management. This policy was tenaciously adhered to by defendants after the death of Charles, even to the extent of denying to plaintiff any property interest in the partnership assets. The defendants were not only surviving partners, but were the heirs of the deceased member. One of them is the administrator. Defendants were in possession of all property interests held by deceased at the time of his death. Their relationship to plaintiff was fiduciary. Their policy and purpose was to retain and themselves manage the property. If they should be defeated in their claim of exclusive ownership, their attitude was not to liquidate the partnership affairs, but, regardless of plaintiff's one-twelfth interest (as assumed), to continue the partnership business. The statute not only did not compel the plaintiff to accept or the defendants to insist upon division in kind, but, under the facts presented here, was inapplicable; for there was no property that might be sold, except plaintiff's one third of decedent's one fourth in the residue of the partnership assets after liquidation. The parties were at liberty to make their own issue and to adopt their own scheme of distribution. Defendants continued the business as if they were sole proprietors, sold and readjusted properties, and largely readjusted methods of holding and accounting. In this situation, plaintiff's petition asked that her interest in all the partnership property be decreed to be held in trust for her, and the amount determined and impressed upon all of it. The defendant administrator, who undoubtedly voiced the sentiment of his codefendants in his report and amended inventory, filed after their main contention was defeated, adopted, as administrator, the plaintiff's claim (though not altogether consistently), and asked for its determination. The suit in equity and the proceedings in probate were thereupon consolidated. Before consolidation, the trial of the suit in equity had been begun, on the theory that the matter to be determined, if defendants' claim to the property was decided adversely to them,

was "valuation of the items" of the property,—the assets and liabilities. The partnership property was held and the partnership conducted in different names and capacities, the more important part being the "Fleming Brothers, Inc.," a corporation which was owned exclusively by the partners, and which was merely an instrumentality for conducting their business. After the consolidation of the equity suit and the probate proceedings, the trial of the cause was resumed, and the case was presented to the referee, and by him determined pursuant to the theory adopted at the beginning, that plaintiff's interest should be valued and a trust for it impressed upon the partnership assets. One of defendants' contentions here is:

"As long as Fleming Brothers, Incorporated, was making money, during the fat years from 1916 to 1923, the judgment gives the plaintiff the benefit accruing to a stockholder; but suddenly and arbitrarily, at a convenient date, April 1, 1925, after the corporation has been operating at a deficit, due to a general business depression and consequent vacancies, the whole allowed claim is gallantly switched over into a fixed money demand, as of April 1, 1925, and made to draw interest, like any money debt. * * *"

A perusal of the record is convincing that this statement is a reflection of the defendants' own attitude toward the case, and that it was they who, after the referee's report, changed their position, and demanded a division in kind,—a division which, by reason of their persistence in continuing the partnership business after the death of one of the partners, and after the consequent legal dissolution of the partnership, and by reason of change in methods, could not be made satisfactorily and equitably. The parties were at liberty, not only to frame in the first instance, but to interpret the issues which should be tried. This they have done, and they are bound by practical issues thus formed and tried. The complications of the case demand rather a tedious discussion of the issues and evidence.

Plaintiff and decedent were married in 1880. Decedent died intestate January 15, 1916. There was no surviving issue. Decedent's only property is that involved in the present controversy.

The petition alleges that the husband died seized of an un-

divided one-fourth interest in all the partnership property, "consisting of the stock of the corporation styled Fleming Brothers, Incorporated, and certain real estate, and that her husband carried $58,000" life insurance; that the surviving brothers claim to own all of the partnership property, under three written contracts set out and construed in *Fleming v. Fleming*, 194 Iowa 71. The petition alleges that:

"The three brothers of her [plaintiff's] deceased husband, who are named as defendants herein, claim that said stock is theirs, and turned in and had canceled each certificate of 2,500 shares, and have turned in and marked canceled certificate of 2,500 shares which this plaintiff alleges was the property of her deceased husband, and have had reissued to themselves the 10,000 shares in certificates of one third of 10,000 shares to each of them."

It alleges that defendants have collected the life insurance "and have converted the same to their own use;" that plaintiff's "husband died seized of an undivided one-fourth interest in all of the property of the Fleming Brothers, as a partnership, which partnership property includes all of the capital stock and property of Fleming Brothers, Incorporated, and also $58,000 of life insurance, and real property standing in the name of her deceased husband, all of which is claimed by the three brothers of Charles Fleming, deceased." The prayer of the petition is that the contracts be construed and be decreed to have no binding effect upon plaintiff; that all of the property now held by the defendants to the extent of plaintiff's interest be held in trust for her; that the amount of her interest as surviving widow of Charles Fleming be fixed and determined by the court, and be impressed in that amount upon said property in the hands of the defendants; and that plaintiff be decreed all such other, further, and different relief as to the court may seem just.

The answer alleges, in substance, that decedent was, in effect, one of four joint tenants,—not a copartner,—and that the interest of decedent ceased at his death, and plaintiff was not entitled to dower therein; that the insurance upon the life of decedent was payable to the individual defendants, and that plaintiff had no interest therein.

Defendant John A. Fleming was, in due course, appointed

administrator, and, on April 16, 1916, filed inventory. The inventory stated that there was no cash on hand, no funds on deposit, no accounts or bills receivable. It described the joint operations and property ownership of the defendants and the deceased under the name Fleming Brothers, setting forth the three contracts.

"In all the financial and domestic economies and enterprises the said four brothers at all times throughout the period of their business activities, and throughout the active life of Charles F. Fleming, have acted as joint tenants * * * that as such surviving contracting parties they [defendants] are the joint owners of all the property rights and interest of which the said Charles Fleming, deceased, was possessed * * * and * * * claimed to be the absolute joint owners of all the said property * * * that there was issued to Charles Fleming in his lifetime 2,500 shares of the stock of Fleming Brothers." (A full purported explanation of which follows.) "There are no right or interests of any sort belonging to the estate of Charles Fleming, deceased, save and except his exempt household effects * * * That the business policy of the Fleming Brothers as such joint owners is such that any and all known personal indebtedness, including the funeral expenses * * * has been paid and all proven claims against the estate will be paid by the survivors. * * *"

On June 18, 1924, there was filed "Report of John A. Fleming, Administrator," which made reference to the opinions of this court in the case and:

"That pending said litigation the surviving brothers have continued and are now continuing to operate and control the property formerly belonging to said four brothers and they understand that their right to do so has not been disturbed by the said court decision except to the extent of requiring them to turn over to Anna B. Fleming one half of the interest of Charles Fleming in all of the property jointly owned by said Fleming Bros. at the time of his death and to account to her therefor.

"To the end that such a settlement can be effected, your administrator has this day filed and does herewith file amendment to his inventory setting out the assets and liabilities of said joint tenancy as of January 15, 1916, which has been held

to be partnership, and of Fleming Brothers, Incorporated, as fully as same are known to your administrator and your administrator asks that said amendment to inventory be treated as a part of this report.

"That no claims have ever been filed against the estate of Charles Fleming, deceased."

The report here makes special reference to the Getchell property, the life insurance, the indebtedness growing out of them, and proceeds:

"That said debt was in reality the debt of Fleming Brothers Incorporated but was paid out of the avails of said policies and the cash balance was by the surviving brothers put into Fleming Brothers Incorporated. So that said surviving brothers are creditors of said corporation to the said amount of $55,482.26 on account of said 'Charles Fleming Insurance' transaction, as between themselves and 'the estate of Charles Fleming,' and are entitled to credit accordingly in a settlement with the surviving widow, Anna B. Fleming.

"That in so far as Charles Fleming was obligated to third persons his obligations have been carried on by his surviving brothers and Fleming Brothers, Incorporated.

"That the funeral expenses of the deceased have all been paid * * * That no regular dividends have ever been declared or paid by Fleming Brothers, Incorporated, but that the net earnings of said corporation have for the most part been intermingled with the funds of the four brothers during the lifetime of Charles Fleming and with the funds of his surviving brothers since his death, doing business under the name of 'Fleming Bros.'

"That all of the expenses and disbursements incident to conduct of their business and their personal and family expenditures of all sorts, have always been paid from the common funds of 'Fleming Bros.' and 'Fleming Brothers, Incorporated.'

"That since the demise of Charles Fleming, January 16, 1916, the surviving brothers, Robert J. Fleming, Stanhope Fleming and your administrator have paid out to or for the benefit of Mrs. Anna B. Fleming, surviving widow of the aforesaid, the sums set forth in statement 'Exhibit A' hereto attached and made a part hereof, amounting in all to $20,428.46.

"That for a long time prior to the death of Charles Fleming his wife Anna B. Fleming drew on Fleming Bros. $45.00 per week for her own use and the weekly amounts paid her since that time have been kept up by the surviving brothers in accordance with their understanding of the true intent and purpose of their joint or family arrangement or method of living. Said surviving brothers have at all times deemed Anna B. Fleming to be a member and a participant in said family arrangement but your administrator respectfully shows to the court that in view of the decisions of the courts touching the rights and obligations of said surviving widow and the surviving brothers of Charles Fleming, said weekly installments are discontinued from and after June 7, 1924. * * * However, your administrator and his surviving brothers by and through him respectfully submit that, in any accounting with or settlement ordered, account should be taken and credit given them for the aggregate amount paid by them to and on behalf of said surviving widow as shown by said 'Schedule A.'

"Your administrator further shows to the court that the surviving brothers of Charles Fleming, deceased, including himself, being in control of all of the stock of Fleming Brothers, Incorporated, are ready, willing and able to cause the stock of said corporation to be issued to Anna B. Fleming in such amount as the court may determine and direct not in excess of one eighth of the whole thereof, subject, however, to a proper and lawful allocation of the liabilities of said corporation and the relation and obligation of Charles Fleming in respect thereto.

"And your administrator further shows that himself and his surviving brothers are ready, willing and able to make accounting and settlement with Anna B. Fleming, surviving widow in relation to the affairs of 'Fleming Bros.'

"Your administrator however respectfully submits that in view of the situation as it stands in fact and also in view of the decision of the Supreme Court aforesaid holding their said joint contracts to be valid in part and in all respects except as to Anna B. Fleming, surviving widow, it is practically unnecessary and unlawful that one fourth of the property of Fleming Bros. and one fourth of the stock of Fleming Brothers, Incorporated, be set apart and segregated and administered upon in the ordinary manner as being the estate of Charles Fleming, deceased.

"Your administrator respectfully submits this whole matter should be adjusted by the court taking an accounting as to the ultimate interest of said surviving widow in said corporate stock and that the amount to be turned over and issued to her be determined and that the amount otherwise due her be determined and that the surviving brothers be permitted to make final settlement with such surviving widow on the basis of such order."

The report here sets out the prayer of the petition in the present equity suit, and a portion of the decree and opinions of this court and procedendo, and continues:

"That no further proceedings have been had in said cause. Therefore your administrator respectfully shows to the court that it should proceed in the said cause No. 25279 Equity, to modify the former decree so as to impress the property of Robert J. Fleming, John A. Fleming, Stanhope Fleming, a partnership, with a trust in favor of the plaintiff to the extent of a net undivided one eighth of the property held by them as property, subject to a dower interest in the plaintiff in accordance with the prayer of the plaintiff's petition as hereinbefore set forth; the court taking an accounting so far as necessary as to the assets and liabilities of Fleming Bros. and of the value of the stock of Fleming Brothers, Incorporated, to such extent as is necessary to ascertain and admeasure the actual dower interest of the surviving widow, Anna B. Fleming, in said stock and other assets of Fleming Bros."

In the amendment to inventory so filed, defendant John A. Fleming, as administrator, reported, under the heading "Description of Real Estate of Fleming Brothers," that, under the contracts attached to the original inventory, Charles Fleming "had acquired on behalf of Fleming Brothers an undivided one-half interest" in described property in Minnesota. (This item, for reasons not here pertinent, has been eliminated.) Under the same heading, the amendment to inventory listed the Okoboji property as "conveyed to Fleming Brothers * * * consisting of Robert J. Fleming, Charles Fleming, John A. Fleming and Stanhope Fleming." The amendment listed property known as the Getchell property, stating that, since the original inventory, the surviving brothers had sold a portion of it through Fleming Brothers, Incorporated, for $41,000. Under the same heading,

the residence property of Robert J. was listed as encumbered to the amount of $12,000. The amendment contained a division entitled "description of real estate owned by Fleming Brothers, Inc.," in which were listed described lots in Des Moines, "with the Fleming Building" and an adjacent property. Under this heading were listed various other real properties, among them the Getchell property, stating that, "as the title stands of record, the value of this unsold tract is reflected in the stock of Fleming Brothers, Incorporated, and it is here listed as corporate real estate for that reason; though it is a duplication * * *" In the amendment to inventory was another division, entitled "General Assets of Fleming Brothers, Incorporated," under which were listed various stocks, with their respective par values, and "miscellaneous bills receivable * * *. $6,815.89." It states: "For cash on hand see general assets of Fleming Brothers." This amendment to inventory contained also a division entitled "Fixed indebtedness of Fleming Brothers, Incorporated," under which were listed the mortgages on the Fleming building and adjoining property in their several amounts, with the result: "Total fixed liabilities of corporation $355,000." There were also listed current liabilities $8,934.85, with the stated result, "total liabilities of corporation $363,934.85." It was stated, under the last mentioned heading, that, in erecting the Fleming building, and in acquiring the ground, "a large amount of borrowed money was used by the Fleming Brothers in addition to the proceeds of the mortgages described * * * The state of said liabilities on January 15, 1916 [date of death of Charles Fleming], was as follows:" (Here follow individually listed bills payable, amounting to $146,797.96, besides sums borrowed on policies on the lives of the surviving brothers, aggregating some $75,000.) The amendment to inventory proceeds:

"That the total amount of said funds borrowed by the four Fleming Brothers from the sources aforesaid and which went into the [Fleming building and ground] * * * as said indebtedness stood at the death of Charles Fleming was     $240,578.96
"Add 'Fixed Indebtedness' Item 4     363,934.85

"Total indebtedness of Fleming Brothers,
Incorporated,     604,513.81

"Of which Charles Fleming's interest is chargeable with one fourth, to wit,    151,128.45

"* * * that by the supplemental opinions of the Supreme Court * * * the whole insurance upon the life of Charles Fleming, as above enumerated, amounting in the aggregate $55,482.26, was the property of his surviving brothers, Robert J., John A., and Stanhope Fleming. That by reason of the matters above set forth, the said surviving brothers are entitled to have established as equitable interest in and claim against Fleming Brothers, Incorporated, to the full amount of the said insurance proceeds, namely $55,482.26, as between themselves and the surviving widow of said Charles Fleming, deceased.

"That such of the indebtedness enumerated in this item as existed at the death of Charles Fleming and as still exists has been merged in obligations signed by Fleming Brothers, Incorporated, and the three surviving brothers.

"General Assets of Fleming Bros.

"Jointly Owned by R. J. Fleming, Charles Fleming, John A. Fleming and Stanhope Fleming under contracts attached to original inventory and treated by the Supreme Court of Iowa as partnership property and subject to claim of Anna B. Fleming for dower.

"Item 1.   10,000 shares of stock Fleming Brothers, Incorporated, par value $100.00 per share of which 2,500 shares had been issued in the name of Charles Fleming and a like number of shares to each Robert J., John A., and Stanhope Fleming, all of which had been assigned in blank by each of the four brothers and was at, and prior to the death of Charles Fleming, kept in, a common receptacle. That the assignment in blank by Charles Fleming of said 2,500 shares, in so far as it affects the dower interest of Anna B. Fleming, has been held to be void by said Iowa Supreme Court decision. That prior to the commencement of the litigation between Anna B. Fleming and the surviving Fleming Brothers, the said certificates for said 10,000 shares of stock were canceled and in lieu thereof there were issued certificates for said number of shares of stock running to Robert J., John A., and Stanhope Fleming, or the survivor of them. This was done under the supposition and belief that the three contracts attached to the original inventory entitled said three surviving brothers to all of the stock of said corporation.

"That in view of the said decision of the Supreme Court of Iowa the outstanding stock of said corporation should be canceled and reissued."

Here follows an explanation of the authorized capital stock of Fleming Brothers, Incorporated, and the amount issued, with the statement "that, in consequence, there was, at the time of the death of Charles Fleming, deceased, no authorized basis for stock of said corporation in excess of $700,000." Following is a list of shares of bank stock, par value stated at $100. One item referred to as "sold since the demise of Charles Fleming for $3,155." Shares of insurance company stock are listed as producing, on liquidation, $282. There is listed an item "Miscellaneous bills receivable * * * $18,146.33," with the note that a considerable portion of them, since Charles Fleming's death, have proved worthless, and been charged off. Following these is:

"Item 7. Agency contract between the Massachusetts Mutual Life Insurance Company and Robert J., Charles, John A., and Stanhope Fleming, or the survivors or survivor of them, under which commissions upon renewal premiums were secured and have since been paid to the surviving brothers. The value of the contract at the time of the demise of Charles Fleming depended and has always since depended on the voluntary payment by the persons insured of the premiums stipulated in their policies. This ceased to be an active agency on or about December 31, 1917. The actual gross amount collected by the surviving brothers from said sources since January 15, 1916, is $57,346.63, without deduction for the services of the surviving brothers in making said collections.

"Item 8.  Cash on hand                                    $4,483.72

("Note 1: This item of Cash on Hand is made up of the intermingled funds of Fleming Bros. and Fleming Brothers, Incorporated, and it is impossible, in view of the business methods of the Fleming Brothers, to designate the exact amount of this Cash on Hand which should be allocated to the corporation and to Fleming Bros., respectively.) * * * I hereby certify that the foregoing is a full, true and complete inventory of the real estate and personal property jointly owned by Robert J., Charles, John A. and Stanhope Fleming, on January 15, 1916, the date of the demise of Charles Fleming, deceased, so far as the same

has become known to me, together with full and correct list of the heirs of the said Charles Fleming, deceased, as I verily believe. I further certify that all of the said property except as hereinbefore stated, or the proceeds thereof, is on this date, June 16th, A. D. 1924, in the hands of the surviving brothers of Charles Fleming, and is held subject to the rights of the surviving widow of said Charles Fleming, as defined and determined by the Supreme Court of Iowa in the opinions and decisions hereinbefore referred to.''

The report and amendment to inventory are in evidence without objection.

On September 16, 1924, an order was entered consolidating the suit in equity and the probate proceedings. Thereupon ''all of the issues of law and fact'' were referred to William M. Wilcoxsen, ''with full power to hear and determine and report to this court his findings of fact and conclusions of law * * *'' The parties, with their witnesses, accordingly appeared, and, beginning March 16, 1925, introduced their evidence. There was some uncertainty as to what properties were carried by the corporation and what properties were formally owned by the partnership. There were disputes with respect to the propriety of entries in the corporation accounts; but the suit was never, as defendants now assume, a stockholders' suit, or a suit against a corporation for accounting, or one to wind up a corporation or partnership. Until the referee's report was filed and exceptions taken by defendants, defendants proceeded upon the theory that the value of the properties, including value of the stock of the corporation and its earnings, was the subject of the investigation, and was to be determined for the purpose of ascertaining the value of plaintiff's interest in all the partnership holdings, and for the purpose of impressing such interest as a trust on the partnership assets.

Decedent and defendants were in partnership. The corporation was a part of the partnership assets. Defendants were the heirs of decedent. There were no creditors. The plaintiff's interest as widow was alone involved. The administrator, in her interest, was entitled to have a partner's lien impressed upon the partnership assets, for her protection. *Hoyt v. Sprague,* 103 U. S. 613 (26 L. Ed. 585). The defendants sustained fiduciary relationships to plaintiff, and she might proceed as she did, with

defendants' acquiescence, to have a trust impressed, practically the equivalent of, though not in name, a partner's lien.

Ordinarily, the duty of the surviving partners to account is to the personal representative. 47 Corpus Juris 1160. The personal representative in this case is one of the partners. He, by virtue of his report and the consolidation of the proceedings in probate with the suit in equity, is demanding an accounting. While in his report he says that the surviving partners are ready to cause the stock to be issued to plaintiff in such an amount as the court may determine, not in excess of one eighth, subject to proper allocation of liabilities, he also says that they are ready to make an accounting; that "it is practically unnecessary and unlawful that one fourth of the property of Fleming Brothers and one fourth of the stock of Fleming Brothers Incorporated be set apart to secure and be administered upon in the ordinary manner as being the estate of Charles Fleming, deceased;" that "this whole matter should be adjusted by the court taking account as to the ultimate interest of said surviving widow in said corporate stock, and that the amount to be turned over and issued to her be determined, and that the amount otherwise due be determined;" that the court should proceed in the equity cause to "impress the property of Robert J. Fleming, John A. Fleming, and Stanhope Fleming with a trust in favor of the plaintiff to the extent of a net undivided one eighth of the property, in accordance with the prayer of the plaintiff's petition, the court taking an account so far as necessary as to the assets and liabilities of Fleming Brothers and of the value of the stock of Fleming Brothers Incorporated to such extent as is necessary to ascertain and admeasure the actual dower interest of the surving widow, Anna B. Fleming, in said stock and other assets of Fleming Brothers." The administrator, therefore, while formally offering to cause stock to be issued to plaintiff, was asking the court to impress the property with a trust in favor of the plaintiff "to the extent of a net undivided one eighth of the property." The prayer of the petition was to take an accounting of the value of the stock (which defendants are now complaining of) "to such an extent as is necessary to ascertain the dower interest in the stock and other assets." Clearly, "net undivided one eighth of the property" and the accounting necessary to ascertain and admeasure it envisaged the ascertainment of the value of plaintiff's

interest, the impressing of it as a trust, and plaintiff's recovery of the amount so ascertained from the assets,—just what the parties and the referee proceeded to do.

The suit in equity was originally brought on for trial December 11, 1916; whereupon plaintiff offered in evidence "a statement of the condition of Fleming Brothers financially furnished by them at the request of plaintiff as of the fifteenth day of January, 1916" (the contents of which are set out post). With this offer plaintiff rested her case, under stipulation "reserving the right to subsequently inquire further into the assets and liabilities of Fleming Brothers; but, of course, [defendants] do not wish to be understood as conceding that the relationship between the brothers was that of a partnership, in the technical sense of the word."

Plaintiff's counsel: "The only concession I asked of you was that, in the event there was a decree for the plaintiff, we might subsequently go into the question of the valuation of the items."

Defendants' counsel: "The defendants are content that that inquiry, if it ever becomes a subject of inquiry, may be reserved to a later time, following the decision of the court as to the legal status of the brothers as between themselves."

The determination of such legal status was thereupon accordingly submitted to and determined by the trial court, and, on appeal, by this court. *Fleming v. Fleming,* 194 Iowa 71. It will be seen, by reference to the contracts and the contentions of the parties as set out in the report of the former appeal, that the four brothers clearly intended that the death or disability of one of them should not interfere with the continuance of the organization and prosecution under it of the business, or with the accumulations and enlargement of the fortune which they were thereunder building up; particularly that such event should not interrupt the continued management of their properties and business by the survivors. It was the evident purpose of the four brothers that, in the event of the death of one, the survivors should continue, without interruption, the business in which they were engaged. It is manifest that the defendants believed that they had built up a valuable and prosperous business, in which valuable properties had been acquired, and they intended that there should be no division, with widow or heirs, of the stock of the corporation or other properties, and no intrusion into their

possession, operation, or management of their properties or affairs. The stipulation, therefore, made at the preliminary stage of the trial in 1916, by which there was reserved "the right to subsequently inquire further into the assets and liabilities of Fleming Brothers and the right" subsequently to go into the question of the "valuation of the items," was not inadvertent, but was in line with the clear purpose of the parties to ascertain (if plaintiff should be successful in the preliminary inquiry) the assets and liabilities of Fleming Brothers and the "valuation of the items." On the trial of the issues, defendants' attitude in respect to their possession, ownership, and management by entirety, without interference from plaintiff, was not changed.

Both parties offered in evidence before the referee a report made by an auditing company, dated June 26, 1925, "of Fleming Brothers joint accounts from January 1, 1916, to April 1, 1925." The report is addressed to Fleming Brothers, and states:

"In accordance with instructions, we have made an audit of the books and records of Fleming Brothers, Inc., Fleming Brothers Insurance Agency and Fleming Brothers Joint Accounts, for the purpose of determining the total income in which Mrs. Fleming has a dower interest, for the period from January 1, 1916, to April 1, 1925, and have compiled the following exhibits as submitted herewith:

"Exhibit A.　Allocation of Apportionable Net Income.
　　　" 　　B.　Profit and Loss Statement—Fleming Brothers, Inc.
　　　" 　　C.　Summary of Apportionable Net Income of Fleming Brothers, Inc.
　　　" 　　D.　Profit and Loss Statement—Fleming Brothers Insurance Agency.
　　　" 　　E.　Summary of Apportionable Net Income—Fleming Brothers Insurance Agency.
　　　" 　　F.　Profit and Loss Statement—Fleming Brothers, Regular.
　　　" 　　G.　Summary of Apportionable Net Income—Fleming Brothers, Regular.
　　　" 　　H.　Personal Expenses Chargeable to Joint Account.

Exhibit I. Salaries paid to Fleming Brothers, Joint Account.

"A definition of the terminology used in the above captions is as follows:

"Apportionable Net Income—Net Income to which Mrs. Fleming's dower interest attaches, all other income being reflected in Profit and Loss statements under caption of exclusions.

"Joint Account refers to Surviving Brothers.

"Salaries Paid—Executive salaries paid to the 'Surviving Brothers' by the corporation, for services rendered in managerial capacity, being reflected as income on the 'Fleming Brothers —Regular' records, and as exclusions on the P & L statements.

"Personal Expenses refers to all expenses charged through 'Fleming Brothers—Regular' records, which are chargeable to the 'Joint Account,' and not charged against the 'apportionable net income,' being reflected on the P & L statements under the caption of exclusions.

"The net earnings of $285,714.34 as reflected by Exhibit A, and detailed in Exhibits B, D, and F, constitutes the total net earnings to which Mrs. Fleming's dower interest attaches. The allocation of this income to Mrs. Fleming and to the joint account of the 'surviving brothers' results in a credit to the former of $23,809.79, and to the latter of $261,904.55. Mrs. Fleming, having received $20,874.04 in cash during the period under review, has a balance due her amounting to $2,935.75.

"We have given Mrs. Fleming credit for her pro-rata share of all gross income, excepting salaries credited to the 'Joint Account,' dividends from Fleming Brothers, Inc., and insurance received on the policies of Charles Fleming at his death.

"We have charged Mrs. Fleming with her pro-rata share of all expenses resultant in the earning of the net income. All expenses which were not incurred in the regular operation of the business, that is, in producing the gross income, have been excluded and charged to the 'Joint Account' of the 'Surviving Brothers,' as reflected in Exhibit H.

"Personal Expenses chargeable to the 'Joint Account' amounting to $410,792.14 are detailed in Exhibit H. In our recent conference, this item was somewhat confusing, inasmuch as it exceeded the amount of the total net apportionable income, and when compared to the portion of the earnings credited to

Mrs. Fleming, seemed erroneous. Against these withdrawals is a credit of salaries in the amount of $151,500.00, which salaries have been deducted from gross income. Our understanding is that the Fleming Brothers were entitled to salaries out of the earnings, before any apportionment of earnings was made. Hence, the withdrawals of the Fleming Brothers in the amount of $410,792.14 constitutes withdrawals of earnings to the amount of $259,292.14, and withdrawals of salaries in the amount of $151,500.00. This is detailed in Exhibit A.''

The profit and loss statement of the corporation shows the income in 1916 from rentals $111,172.17 (omitting, for brevity's sake, 1917 to 1921, inclusive, and 1923); 1922, $204,257.26; 1924, $177,392.25; first three months of 1925, $37,363.91. It shows a net profit for 1916, $21,704.50; for 1922, $49,046.64; for 1924, a net loss of $1,374.06; and for first three months of 1925, a net loss of $14,726.34. The profit and loss statement of the insurance business shows a net profit in 1916 of $10,406.26; 1922, $5,267.09; 1924, $3,575.99; and for the first three months of 1925, $734.01. The profit and loss statement of ''Fleming Brothers Regular'' shows for 1916 a loss of $12,956.85; for 1922, gain of $26,583.93; for 1924, a loss of $502.47; for the first three months of 1925, a loss of $14.80. The statement of personal expenses chargeable to joint account ''of Fleming Brothers Regular'' account includes amounts paid for the years 1916 to March 31, 1925, ''attorneys' fees Anna B. Fleming suit $4,988.68;'' R. J. Fleming personal, $24,121.80; R. J. Fleming house expense, $78,979.54; J. A. Fleming personal, $59,988.12; J. A. Fleming house, $39,593.49; Stanhope Fleming personal, $25,088.56; Okoboji house account, $8,665.47; Fleming Brothers personal, $63,458.29; church, lodges, club dues, $31,849.57; and comparatively minor items for accident insurance, ''Andover and Exeter school expense,'' ''personal taxes,'' ''cash advanced children,'' ''lunch account,'' ''investment children,'' and others, all totaling, for the period, $410,792.14. The statement of ''officers' salaries received of the Fleming Brothers Regular account,'' showing salaries to each of the surviving brothers for 1916 and 1917 of $4,000 each, raised in 1918 to $5,000, and in 1919 and subsequent years to $6,000, totals, for each of the surviving brothers for the period 1916 to March 31, 1926, $50,500; for the three, $151,500. This auditing report summarizes the

total apportionable income as $285,714.34: one twelfth to plaintiff, $23,809.79; eleven twelfths to defendants, $261,904.55. Plaintiff was paid by defendants $45 per week to June 7, 1924,— a total of $20,874.94,—leaving, according to the auditor's statement, a balance due from the apportionable net income, $2,935.75. Defendants' withdrawals, including salaries of $151,500, are shown to have been $410,792.14, of which they are charged with the difference, $259,292.14, between these two items, leaving a balance due them, $2,612.41.

Defendants complain that, if plaintiff is to have a money judgment, it must be confined to the value in money of her distributive share, ascertained as of the date of Charles's death,  January 16, 1916, with 6 per cent simple interest, after deducting amounts paid to her and income tax thereon. The case was tried upon the theory that its purpose was to ascertain the value of plaintiff's distributive share in the capital and in the earnings up to March 31, 1925; the early part of the trial was tacitly assumed as the terminal date of the accounting, and the account was taken and the amount of plaintiff's interest ascertained accordingly. The defendants' exceptions stated:

"These defendants, for the purposes of this accounting, accede to and acquiesce in the finding of the referee * * * as to the 'apportionable income,' namely $285,714.34, and to the referee's additions thereto (specified), conceded total apportionable income $325,415.71; but these defendants expressly except to the addition thereto of specified items totaling $632,222.65."

Here follow the grounds of these exceptions, the result of which is in the exceptions stated to be, "ultimate corrected apportionable income, $225,088.31." It therefore appears that the complaint made here is not the complaint made below. Furthermore, defendants, while at decedent's death they had the right to wind up the firm business and make settlement with the administrator and plaintiff, did not do so. They elected to continue the business as if there had been no dissolution. They became trustees of decedent's interest. They have continued to use that interest as in a continuing partnership. The plaintiff had the right to elect to take the profits realized from the

continued use of her property in the partnership business. *Young v. Scoville*, 99 Iowa 177. By mutual acquiescence the account was taken to March 31, 1925. Plaintiff was entitled to the payment of the amount of her distributive share as so ascertained as of that date, and consequently to interest since that date.

Plaintiff's claim is not bottomed on conversion. Her suit and the report or application of John A. Fleming, administrator, as consolidated, were accepted, and treated as a suit to impress a trust in favor of plaintiff to the amount of her one-twelfth interest, to take an account to the extent necessary to ascertain the value of that interest, with the object, necessarily, of establishing it and effecting its withdrawal. Though not always consistent, this is what is asked for by the administrator. By the acquiescence and active participation of both sides, the consolidated case has been fully tried upon this theory. The plaintiff and the referee were led to believe that such was the theory of the case on which the rights of the parties were to be determined. The referee made his report accordingly. The defendants cannot be permitted to speculate upon the result of the trial, and after the effort and expense have been made, and they have lost, to change front, and deny the right of the referee to do the very thing that they were inviting him to do.

Defendants now complain that the parties and pleadings were not such as to authorize the referee to investigate the corporate affairs or to correct, charge, or surcharge the corporate accounts and books—to review, correct, or set  aside, for instance, ''unwise expenditures and excessive salaries.'' It is true that this is not a suit brought to remedy the wrongs of a stockholder, perpetrated by the corporation or by the officers in control. The corporation under consideration here, however, was owned exclusively by the four partners. The stock certificates, though made out in four individual lots, to the four individual partners (changed, after Charles's death, to the three survivors), were held in their entirety as partnership property. The surviving partners are trustees for the liquidation of the partnership·assets, and hold all the assets as such trustees. *Fried v. Burk*, 125 Md. 500 (94 Atl. 86). As trustees, they are entitled to such credits, whether

formally in the transaction of their business in form corporate, or business transacted outside of the corporate affairs, as they would be entitled to, were there no formal corporate organization. For the purpose of the present controversy, the mere form of corporate organization and the mere formality of keeping the accounts in part on corporate books are of no importance. The partners had the sole management, and were sole owners of the corporation. As between them, the corporate accounts are their accounts. The corporate assets, subject to corporate liabilities, are partnership property, which, to the extent of the interest of the deceased partner, are held in trust. The question here is, what are the respective rights and interests of the individuals, resulting from their ownership and operation of the corporation as their property, as well as of the business and property that were conducted and owned outside of the formal corporate affairs; not what are the rights of stockholders between themselves, as stockholders, or between them as stockholders and the corporation as a corporation.

The referee, in accordance with the theory of the trial, determined the value of the plaintiff's one-twelfth interest in the capital assets of the four partners and in the "apportionable

income" therefrom. He fixed the net value of the assets at $800,164.79, and of the plaintiff's one-twelfth interest at $66,680.40. In arriving at this amount, he found book value of the stock of the corporation to be $700,000. It is now objected that there was no evidence of the actual value of the corporate stock. No objection, however, was made in the court below that the book value, which would be the value of the stock as it appeared on the books of the corporation, was not the actual value. At the trial before the referee, the only contention made with respect to the value of the corporate stock was that $300,000 of the authorized $1,000,000 was not taken up by the proposed addition to the building. It is objected that the liabilities must be deducted from the value of the assets, in order to find the actual value of the stock. The property of the partnership was left in the hands of the defendants by the death of plaintiff's husband. Thereby they incurred a fiduciary relationship to the plaintiff, or at least to the administrator for her. The duty is upon defendants to account. 47 Corpus Juris

1160. The books and accounts kept by them are not before the court. We have no balance sheet, or trial balance, before us, except one of January 15, 1916, purporting to be a trial balance of all the partnership property, including the corporate stock and other stocks, real estate of "Fleming Brothers," "Fleming Brothers firm." It lists all the liabilities, including mortgages. It lists "book value of stock, $700,000." "Book value" of stock means the value as it appears from the books of the corporation. It is a matter of common knowledge that the liabilities of a solvent corporation, including stock, surplus, and undivided earnings, if any, to the amount shown by the books, are the equivalent in amount to the assets as likewise shown. The book value of the assets on one side of the balance sheet is the equivalent of the stock value and other liabilities on the other side. It was the duty of the defendants, as between them and plaintiff, or the administrator, to keep books and accounts, including the books of the particular property of the corporation. Their book entries are evidence of actual value. As has been noted, the value of the Fleming Building, which the evidence shows is a large one, occupying valuable ground, and the value of the ground, are not shown, though, according to the amendment to the inventory, the proceeds of more than $604,000 of indebtedness went into the property. Excessive valuation of the stock by the referee does not appear.

It is objected that some of the properties charged were charged both in the list of partnership assets and in the list of corporate assets, and thus duplicated.

The burden of the accounting is upon the defendant partners. The account was taken by the referee. We may assume that such accounting was triable *de novo* before the district  court. Defendants, however, filed exceptions to the referee's report. The trial in the district court was the trial of those exceptions. The record is silent as to whether all the evidence before the referee was before the district court. Some of it was before the district court, and evidence was taken on the hearing of the objections in the district court.

The trial here, though *de novo*, is *de novo* of the trial before the district court. See *Young v. Scoville,* 99 Iowa 177. The defendants are not entitled to a review of a case or on a theory

 other than that presented to the district court. The trial *de novo* here is, therefore, a trial *de novo* of the exceptions to the referee's report, and is limited to those exceptions.

At the trial before the referee, objections that particular property was reflected in the value of corporate stock were made as to Minneapolis lots, as to Snyder property, and as to the unsold Getchell property, but not as to the other properties which are the subject of complaint made here. Defendants here complain that the R. J. Fleming residence, the Getchell property, and the Okoboji cottage were carried as corporate assets, and their value thus accounted for in the corporate stock, but were allowed by the referee as assets in addition to the corporate assets, and their value thereby duplicated. As stated, the corporate books are not before us. Defendant John A. Fleming says that the residence "has not been considered a resource of anybody. As a home, it was carried along, and I do not know how it appears on the books, but I do know how it was paid for, and it has always been regarded as a joint asset, like every other dollar we had at that time." John A. Fleming testifies that it was understood that the Getchell property was the property of Fleming Brothers; that the encumbrance "was paid out of Fleming Brothers, Incorporated, after Charley's death." It seems to have been assumed at the trial to have been property for which separate accounting would be made.

The amendment to inventory lists the Getchell property as acquired by Fleming Brothers, and states that a part of it has been sold; that the value of the unsold tract is reflected in the stock of Fleming Brothers, and is duplicated. The unsold part is appraised and charged at $500. Defendants' counsel stated before the referee, with respect to the Getchell property: "* * * At any rate, we have listed it here as it belonged to the partnership; that is the purpose of that listing. Mr. Miller: Well, I think that is about right." The Okoboji property is listed as conveyed to Fleming Brothers. John A. Fleming testifies that: "It is not the property of Fleming Brothers, Incorporated." Defendants complain that the allowance by the referee of "certain stock $23,808" is a duplication. We find no exception to this item. Defendants contend that insurance, surrender value of life insurance $93,781, belongs to the sur-

vivors; and they seem to base their contention upon the former opinion, by which the insurance on the life of decedent was held to belong to the survivors. All this life insurance was paid for out of the partnership assets. Robert J. Fleming testifies:

"We were in a business in which we were preaching the uncertainty of life, so we assigned these policies. Sent them back. They were issued to the individual members of the firm, for the purpose of becoming the property of this joint arrangement of our survivorship. * * * The total surrender value of all the policies held on the lives of each of the four brothers was $93,781, being the surrender value of all these policies,— would be reduced by $18,000, or whatever was the exact amount of the surrender value of Charley's policy."

There is no exception to the failure to deduct the $18,000. The policies were pledged for liabilities which are allowed as corporate or partnership liabilities. In the balance sheet of January 15, 1916, among other assets, is "surrender value of life insurance, $93,781." The loans against the policies are shown, so that the policies were evidently carried on the books as partnership property; and defendants say they had no individual property. Defendants have failed to sustain their exceptions to the acts of the referee in allowing these items.

John Fleming, Jr., was employed by the corporation as superintendent, at a salary of $3,600 per year. The referee found that the "three surviving members of the firm were devoting their entire time to the conduct and management of the business," and that the salary of John Fleming, Jr., totaling $15,300, was not a proper charge as against plaintiff. The exception is that the expenditure was regularly authorized by the board of directors for services actually rendered, was approved by the Federal treasurer department, and that there is no issue as to its propriety. It is argued that this was purely a matter of corporate management, within the discretion of the board of directors. The referee evidently found that the expenditure was unnecessary. There is no evidence of its value or necessity. Its necessity is not argued. Manifestly, the action of the Federal government in allowing or disallowing expenses in computing income has noth-

ing to do with the reasonableness or unreasonableness of charges made by defendants against the plaintiff. The exceptions filed and argued, for reasons that have been discussed, are not well taken.

The referee found that the surviving partners were entitled to reasonable compensation for their services, and allowed them salaries at the rate in force at the time of the death of Charles  Fleming. This resulted in charging back so-called excess salaries amounting to $40,500. Defendants argue that there is no evidence that the salaries drawn were excessive; that no issue with respect to salaries was tendered; that the increase was authorized by the Federal government; that salaries in all lines of business have increased. There is no evidence of the value of defendants' services. Defendants were called upon to account as early as July 5, 1916, when the petition in this suit was filed. They had no right, as against plaintiff, to continue to carry on the business. The general rule (though there are exceptions to it) is that a surviving partner continuing to carry on the business is not entitled to compensation for his services. See *Young v. Scoville*, 99 Iowa 177; 47 Corpus Juris 1077. The question should be determined on equitable principles. While the plaintiff, as a result of the decree, obtains the benefit of the defendants' services, we are unable to find, on this record, that the net allowance for compensation actually made by the referee is inadequate, or that it should be increased.

The defendants' auditor credited among the expense items "depreciation, $125,387.75." The referee disallowed this item. Defendants argue that, in valuing the assets of a corporation  for the purpose of ascertaining the net profits, a deduction must be made for depreciation. The rule is inapplicable to the situation here presented. The deduction by defendants' auditor is purely arbitrary, and for income purposes only. The account taken here is with the defendants, as surviving partners, not only of the conduct of the business and its management and earnings, but of the corpus of the assets. The corporation is a part of the assets. There is no evidence upon which a finding of depreciation in fact, or

the amount, if any, can be based. This record presents no foundation for an allowance for depreciation in the value of the partnership property either of the stock of Fleming Brothers Incorporated or other assets.

One of the statements comprising a part of the auditor's report, Exhibit H, entitled "Fleming Brothers—Regular-Personal expense chargeable to joint account," aggregates $410,-792.14. This is made up of attorneys' fees paid by defendants in this suit, personal, family, and household expenses of various kinds. The referee found that this sum was not a proper charge, as against the interest of the plaintiff. There appears also a charge: "Expense—Charles and Anna Fleming, $20,874.04." The referee found that this was not a proper charge to expense account in the first instance, but that the $20,784.04 was advanced by the surviving partners to plaintiff, and should be charged against her distributive share. Defendants' exception is that these items "were excluded, and not deducted against the interest of plaintiff in income." This exception is based upon another sheet of the auditor's report, entitled "Fleming Brothers Regular–Profit and Loss Statement," which, after listing income amounting to $91,076.72, and expense amounting to $79,106.66, with the result "apportionable net loss or gain $11,970.06," proceeds: "Exclusions, salaries received, $162,300, dividends Fleming Brothers Inc., $45,055.32, expense Joint acct Ex. H. $410,792.14 expenses Charles and Anna Fleming $20,874.04." The footings of this sheet are, therefore, $431,666.18. To arrive at the correct amount of the net income, the auditor was under the necessity of adding what he calls "exclusions," and which more correctly would be "noninclusions in above." It is clear from the facts and from the report, part of which, referring to the $410,792.14, has been quoted, that these sums withdrawn by plaintiff and defendants were withdrawn from the partnership income, and must be taken into account in ascertaining the income. This is what the referee has done.

The foregoing discussion covers in principle, though not in detail, all of the complaints urged in defendants' argument. The discussion has been protracted already to too great length.

The case had the thorough consideration of the referee and the district court. We find no ground for disturbing the account as stated by them. Personal judgment was rendered against the surviving partners for the amount of plaintiff's interest. While this may be, in the circumstances, nonprejudicial, it is in excess of the issues as pleaded actually and the practical issues. Plaintiff was entitled to have the amount of her interest ascertained and impressed as a trust upon all the partnership assets. She was entitled to decree for the satisfaction of the amount of her interest as so ascertained out of the assets, but not entitled to personal judgment. The finding of the referee as to the amount due the plaintiff is approved, and the plaintiff is hereby given a judgment *in rem* against all of the property involved herein, and execution will issue to enforce the payment thereof. The decree will be modified accordingly, and as so modified, affirmed.—*Modified and affirmed.*

EVANS, STEVENS, DE GRAFF, ALBERT, KINDIG, WAGNER, and GRIMM, JJ., concur.