IN RE ESTATE OF ANNA B. FLEMING (WYLIE).

No. 45129.

1138

AUGUST 6, 1940.

Havner, Flick & Powers and Margaret I. Cunningham, for movants-appellants.

Brammer, Brody, Charlton & Parker and Clark, Byers & Garber, for respondents-appellees.

Paul Hewitt & Earl Mills, for Paul Hewitt, executor of the estate of Anna B. Fleming (Wylie), deceased.

STIGER, J.—In the case of Anna B. Fleming, widow of Charles Fleming against her husband's surviving brothers individually and a partnership composed of the Fleming brothers, Mrs. Fleming's right to have her distributive share determined and set off in the partnership property was established. See Fleming v. Fleming, 194 Iowa 71 (1922), 174 N. W. 946, 180 N. W. 206, 184 N. W. 296, 264 U. S. 29, 44 S. Ct. 246, 68 L. Ed. 547.

In 1927, Mrs. Fleming brought a suit against the surviving brothers and partners of her deceased husband and his administrator for the determination of her interest as widow of the deceased partner in the partnership assets in the district court of Polk county. In this case, plaintiff obtained a personal judgment against the surviving members of the partnership in the sum of $142,050.44. The defendants perfected an appeal and in September 1928 filed a supersedeas bond signed by William C. Harbach and others as sureties and at the same time pledged to the sureties their stock in Fleming Brothers, Incorporated, par value $1,000,000, to indemnify them against liability on the bond.

On appeal to the supreme court, Fleming v. Fleming, 211 Iowa 1251 (1931), 230 N. W. 359, the amount found due plain-

tiff by the district court was approved but the decree was modified as to the personal judgment, plaintiff being awarded a judgment in rem against all the partnership property for the approved amount.

In April 1931, Mrs. Fleming filed a motion for decree in the supreme court to conform to the opinion in Fleming v. Fleming, 211 Iowa 1251, 230 N. W. 359. Defendants, in their response to the motion requested that the decree exonerate the sureties on the supersedeas bond because, by the modification ordered by the court, the principals on the bond were exonerated from personal liability. The court did not pass on this request as the parties entered into a written stipulation agreeing on the terms of the decree to be entered by the court which did not determine the liability on the bond.

"In order to protect the interests of plaintiff and defendants in the partnership property", Mrs. Fleming, plaintiff, and the defendants agreed on William C. Harbach as receiver without bond of all the partnership property which included the corporation stock and corporate property. On October 1, 1931, a consent decree was entered in the supreme court pursuant to the terms of the stipulation giving Mrs. Fleming a judgment in rem on all the property in the partnership in the sum of $142,050.44. Mr. Harbach was appointed receiver without bond by the court and directed to take possession of all the partnership property including the corporation stock which had been pledged to the sureties in 1928.

While the decree made the judgment in rem a lien on the property superior to the rights of surviving partners and all persons claiming by, through or under them and authorized the receiver to take possession of the stock, it is quite apparent that there was no intention on the part of the court or the parties to the litigation to adjudicate rights and interests in the stock of prior lien-holders and claimants who were not parties to the suit.

About two years after Mr. Harbach was appointed receiver, the Iowa-Des Moines National Bank & Trust Company com-

menced in 1933 an action against Mrs. Fleming, the partnership and corporation and the receiver on notes executed by the corporation in the sum of over $60,000, said notes being executed prior to the appointment of Mr. Harbach as receiver. The petition alleged the money was loaned the corporation for the purpose of paying taxes and interest on loans on the corporate property which included the Fleming building in Des Moines and asked that its claim be established as a lien on all the property of the partnership prior and superior to the interests of Mrs. Wylie and the members of the partnership.

The receiver, in his answer, stated that, "as to whether plaintiff's claim if and when reduced to judgment is entitled to priority over that of the defendant Anna B. Fleming Wylie, (and others) he has neither knowledge nor information sufficient to form a belief."

All the sureties on the bond, including Mr. Harbach, were members of the board of directors of the bank.

Mrs. Wylie died in December 1933. She had been represented in all of her successful and important litigation, as widow of Charles Fleming, against the surviving brothers of her husband, by the law firm of Parsons and Mills. The litigation began in 1916.

Mr. Hewitt, an associate of Parsons and Mills, was appointed administrator with the will annexed of the estate of Mrs. Wylie. During the depression the value of the estate had substantially depreciated. The Fleming Building, worth about a million dollars prior to the appointment of the receiver, was foreclosed. It became apparent that there were not sufficient assets to pay the in rem judgment.

In 1935 the supreme court remanded the case of Fleming v. Fleming and the receivership to the district court of Polk county which appointed Mr. Harbach receiver without bond. Mr. Harbach served without compensation.

We will now refer to the procedure in the district court which precipitated this case.

In the latter part of 1935 Mr. Hewitt, administrator, en-

tered into negotiations with Howard J. Clark, attorney for the bank and the sureties on the supersedeas bond, for the purpose of obtaining a settlement of the suit brought by the bank and his controversy with the sureties on the question of their liability on the bond. The administrator was represented by Parsons and Mills. A complete settlement was agreed upon and reduced to writing. After referring to prior litigation to the fact that the administrator had caused executions to be issued against property of the corporation, and to the controversies between the administrator and the bank and the sureties, it was agreed that no liability existed on the part of the principals and sureties on the bond. With reference to the pending suit of the bank it was provided that the estate would not be liable in any sum to the bank "except that when and if the administrator of the estate of Anna B. Wylie, or his successor in interest, shall sell said real estate, he as such administrator of said estate shall pay and deliver to the Iowa-Des Moines National Bank & Trust Company one-half of the net amount received by such administrator from the sale of said real estate up to the sum of Thirty Thousand Three Hundred Sixty One and 09/100 ($30,361.09) Dollars and no more." The bank canceled over one half of the indebtedness.

The administrator then filed an application in the probate court for an order approving the agreement which was attached to the application.

The application stated:

"That the attorneys for this administrator having investigated the law with respect to the liabilities to the respective parties in connection with said controversies (I) recommend to this Court that said contract be approved."

An order was made fixing the time for hearing and prescribing notice by posting. The prescribed notice was given. The court made an order on January 15, 1936, finding that the settlement of the controversies and the entering into said contract were for the best interests of the estate and approving the contract.

On September 3, 1937, the devisees under the will of Anna B. Wylie, formerly Anna B. Fleming, filed a motion to set aside the order of January 15, 1936, approving the settlement.

We will set out material portions of the motion. The order of January 15, 1936, was made without notice to movants. The application of the administrator asking for the approval of the settlement was made under a mistake and misapprehension as to the liability of the principals and sureties on the bond and the release of the sureties on the bond was without consideration. William C. Harbach, receiver, was a surety on the bond and a member of the board of directors of the Iowa-Des Moines National Bank & Trust Company when the contract was entered into and, because he was a receiver appointed for the purpose of conserving the assets of the partnership for the benefit of Anna B. Wylie, he occupied a fiduciary relationship and in violation of his fiduciary relationship "entered into negotiations for the purpose of securing his personal release from liability upon said supersedeas bond and the other sureties without paying any consideration to the estate and the procuring of his release from the liability was a fraud on the movants and in violation of his duties as receiver and trustee for movants." When the administrator filed the application for the approval of the agreement, Mr. Harbach as receiver was entitled to the sole possession of all the property of the partnership including the corporate stock and the said receiver concealed this fact from the district court of Polk county at the time the court approved the settlement and such concealment was a fraud on the court and movants. (The sureties retained possession of the corporate stock under the pledge and the receiver took possession of all the corporation property.) Mr. Harbach was a member of the board of directors of the bank and a stockholder, was personally interested in securing a good settlement with the administrator for the bank, but pretended as receiver, to protect the interests of the movants; that the receiver connived and confederated to bring about the settlement to the detriment and in fraud of the rights of the movants. The receiver conspired with attorneys

for the bank and with the bank and the other sureties on the bond in order to secure the settlement and concealed the truth and perpetrated a fraud upon the court in securing the settlement. Paul Hewitt, administrator, knew when he filed the application that Mr. Harbach was receiver and that he was a surety on the bond and a director in the bank and entitled to the possession of the corporate stock.

At the conclusion of the hearing the trial court filed a memorandum opinion from which we quote: .

"We are not concerned with any question of the accounting of W. C. Harbach, receiver, nor with the question of the advisability of the stipulation of January, 1936. We are concerned solely with the question of fraud, actual or constructive, for which the stipulation should be set aside.

"As stated by counsel for the movants, 'This case is based upon the double dealing of Harbach in being a party to Hewitt's giving property which Harbach had the control of in such a manner that Harbach personally benefited by the transaction.'

"The executor yielded to the bank parity in the division of the assets. By a successful lawsuit the executor might have held all of the assets. By an unsuccessful action the bank might have held priority. They preferred to compromise rather than to risk litigation. Both parties went into the stipulation with full knowledge of what they were surrendering.

"In the same stipulation the sureties on the Fleming appeal bond were released and certain shares of stock in Fleming Bros., Inc. were turned over. Whether a claim existed or not against these sureties this court does not decide, but there was consideration for the contract.

"The fact that W. C. Harbach was one of the sureties is made the basis for the contention of the movants that this contract should be set aside. Paul Hewitt, the executor, knew that W. C. Harbach had signed the original appeal bond and he believed that there was no right of action on that bond.

"The court is not unmindful of the fact that it should do its part toward ending expensive litigation. The court feels

in this case that the best interests of the beneficiaries of this estate would not be subserved by prolonging litigation that, in the opinion of this court, would be expensive and probably futile.

"For these reasons, as well as upon the record made and other reasons alleged, this court holds that there was no fraud perpetrated either by or upon Paul Hewitt, Executor in connection with the settlement of January, 1936, and with the order of January 15, 1936, and the movants' application is therefore denied."

I. Appellants' first proposition is that Mr. Harbach, as receiver, had possession of the corporate stock for the benefit of Mrs. Fleming and that he used this property to induce the administrator to release him from liability on the bond, the stock being delivered to the administrator when the order releasing the sureties was entered; that in using said trust property he clearly breached the fiduciary relationship he occupied as a receiver. We find no basis in the record for this proposition.

The receiver was authorized to take possession, operate and maintain the property of the partnership, accumulate the income and obtain, if possible, and submit to the court plans for refinancing or reorganization of the business and affairs of Fleming brothers to the end that plaintiff's judgment be satisfied and *corporate debts and other debts be paid.* If the receiver was unable to reorganize the business he was authorized to submit to the court bids for the real estate for the purpose of discharging the corporate obligations and the judgment of the plaintiff and if plaintiff's judgment was then unsatisfied the receiver was authorized to submit bids for the corporate stock.

Movants assert the receiver was guilty of a breach of fiduciary duty because he did not take possession of the stock as required by the appointing order and hold it adversely to the sureties but used his position as receiver and trustee and the stock to secure his release from liability on the bond. They

state "he used receivership property (the stock) as a 'bait' to the administrator for his personal benefit and to the detriment of the trust". The record does not sustain any of these contentions.

The receiver did not use his position as receiver and trustee or receivership property to secure his release from liability on the bond. He did not induce or influence the compromise agreement personally, as surety or as receiver. Mr. Hewitt, administrator, initiated negotiations for an adjustment of the controversies. The supersedeas bond ran to the administrator. He consulted with his able attorneys, who had represented Mrs. Wylie and were familiar with every detail of the litigation which had endured for 20 years, in regard to the liability of the principals and sureties on the bond. They advised him there was no liability. He then entered into the agreement with counsel for all the sureties. The agreement was presented and explained to the probate court which found that notice of the hearing had been given as provided by the court order, that the settlement was for the best interests of the estate and confirmed and approved the settlement. The trial court, in the instant case, was of the opinion that a suit on the bond would probably not be successful. Mr. Harbach did not participate in any of this procedure.

The receiver's interest in the stock was not involved in the settlement. It was the pledgees' interest that was the subject of the settlement. The sureties only claimed a lien on the stock. They knew that the stock belonged to the administrator of the estate or receivership subject to their lien. When the settlement was approved by the court their attorney surrendered the stock to the administrator free from their lien. Movants contend the receiver committed a breach of fiduciary duty in failing to take possession of the stock and holding it adversely to the pledge because the decree of the supreme court vested the title in the receiver free of all liens, including the pledge, except the judgment in rem. As heretofore indicated, we are of the opinion that neither the supreme court nor the parties intended to determine priority of liens or pass upon the rights

of prior lienholders or claimants who were not parties to the suit. The pleadings did not request such relief.

The court appointed a receiver to the end that plaintiff's judgment be satisfied and other debts of the corporation and partnership be paid and the interests of defendants conserved.

Assuming the supreme court intended to adjudicate that the lien of the pledge was subject to the subsequent judgment in rem, though the pledgees were not parties to the suit, it does not appear that possession of the stock by the receiver during the time it was in the possession of the sureties would have benefited the estate or movants, and the administrator now has possession of the stock free from the lien.

The issue in this division is not whether the lien of the sureties was in fact prior to the judgment in rem. The question is whether the receiver violated his trust. No representation, false or true, was made to the administrator by the receiver. There is no evidence of any damage accruing to the estate or movants by reason of any act of the receiver. The controversy between the administrator and sureties was settled with the approval of the court without a semblance of fraud.

We have set out some of the procedure followed by the administrator in negotiating the settlement and obtaining the order as bearing on the accusation of movants that he and his attorney and the sureties and their attorney and the receiver were guilty of collusion, that they conspired to defraud them and the estate. We have carefully searched the record for evidence that sustains these charges, but find none.

II. Movants state that as the receiver was a stockholder and a member of the board of directors of the bank, his interest in the bank was adverse to his duties as receiver; that the receiver was one of the defendants in the suit brought by the bank; that his interest in the bank was opposed to his duties as receiver and trustee of the property for the benefit of the estate. They assert it was the duty of the receiver to defend against the claim of the bank and that he made no defense.

Mr. Harbach as receiver filed an answer stating that as to

whether the bank's claim against the property was superior to the judgment in rem he had neither knowledge nor belief. The administrator filed an answer stating that the judgment in rem in favor of Mrs. Wylie was superior to the claim of the bank which had not been reduced to judgment prior to the judgment in rem.

Before trial, the administrator and the bank with the approval of the court compromised the suit.

The bank and administrator were asserting conflicting claims to the partnership property and it was their duty to determine their rights, the receiver occupying a disinterested position and acting for the appointing court.

The receiver did not participate in or control in any manner the compromise settlement.

The bank canceled $30,000 of the indebtedness all of which was incurred prior to the judgment in rem and the appointment of the receiver.

The compromise may have been advantageous or detrimental to the bank. If advantageous, that Mr. Harbach was a stockholder and may have received an incidental benefit from the compromise settlement does not sustain the charge of fraud or breach of fiduciary duty. Movants state that the administrator and receiver, in making the settlement, were using their positions of trust and the assets of the trust estate to benefit the bank; that the record shows that none of the parties to the settlement were acting in good faith or in the interest of the estate but were acting solely for their own advantage and to the disadvantage of the estate. These statements are without support in the evidence and are entirely unjustified.

It is quite obvious that the bank's claim would have been compromised and the sureties released had Mr. Harbach been neither a surety nor a director.

Whether the sureties were in fact liable on the bond or whether the bank would have been successful in its suit on the notes is not an issue. It was the opinion of the trial court that "the best interests of the beneficiaries of this estate would

not be subserved by prolonging litigation that, in the opinion of this court, would be expensive and probably futile.'' The question is not whether there was an error of judgment, but whether the settlement was fraudulent as to movants.

With reference to movants' contention that the order approving the settlement was obtained without notice, we find that the notice of the hearing prescribed by the court was given. Furthermore, as the settlement was neither improvident nor fraudulent and was approved by the court it is binding on movants.

This is a law action and as there is substantial evidence to support the judgment of the trial court that the allegations of the motion to set aside the order were not sustained by the evidence and that the stipulation dated January 11, 1936, ''be and remain in full force and effect and that said settlement as approved by this court on January 15, 1936 be not set aside,'' the ruling from which movants appealed is affirmed.—Affirmed.

RICHARDS, C. J., and MILLER, HALE, BLISS, SAGER, HAMILTON, OLIVER, and MITCHELL, JJ., concur.